IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Shawnna H.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Frank Bisignano,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 24-cv-50366<br><br>Magistrate Judge Margaret J. Schneider |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Shawnna H., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, Plaintiff's motion to reverse and remand the Commissioner's decision [12] is denied and the Commissioner's motion for summary judgment [15] is granted.

## BACKGROUND

### A.　Procedural History

On August 25, 2022, Shawnna H. ("Plaintiff") filed a Title II application for disability and disability insurance benefits. R. 30. Plaintiff also filed a Title XVI application for supplemental security income on January 11, 2023. *Id.* In both applications, Plaintiff alleged a disability beginning on October 1, 2022.[1] *Id.* The Social Security Administration denied her applications initially on November 29, 2022, and upon reconsideration on February 23, 2023. *Id.* Plaintiff filed a written request for a hearing and on November 8, 2023, a telephonic hearing was held by Administrative Law Judge ("ALJ") Christina Young Mein where Plaintiff appeared, testified, and was represented by counsel. *Id.* Denise Waddell, an impartial vocational expert ("VE"), also appeared and testified. *Id.*

### B.　The ALJ's Decision

In her ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2022, the amended onset date. R. 32. At step two, the ALJ found that Plaintiff had the following severe impairments: an anxiety disorder, a depressive disorder, post-traumatic stress disorder ("PTSD"), autism spectrum disorder, and an auditory processing

---

[1] Plaintiff initially alleged disability beginning on January 1, 2019, but amended that to October 1, 2022. R. 30, 55.

disorder. R. 33. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 34.

Before step four, the ALJ found that Plaintiff had a mental residual functional capacity ("RFC") to perform a full range of work at all exertional levels; can understand, remember, and carry out simple instructions; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; can occasionally interact with coworkers and supervisors but cannot interact with the public in the performance of job duties; and can tolerate occasional changes in a work setting. R. 36. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 41. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including laundry worker, tumbler operator, and binding printer. R. 43. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since October 1, 2022, the amended alleged onset date. R. 30.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified) (citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's

decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to build a logical bridge and support her mental RFC determination with substantial evidence, (2) improperly assessing the medical opinions, and (3) inadequately assessing Plaintiff's subjective symptoms. The Court finds that the ALJ adequately supported her mental RFC finding with substantial evidence. The ALJ also properly evaluated the medical opinions and Plaintiff's symptoms. Accordingly, the Court affirms the Commissioner's decision.

### **Mental RFC Finding**

Plaintiff challenges the ALJ's mental RFC determination as legally insufficient. Specifically, Plaintiff argues that the ALJ erred by failing to articulate why she found the state agency psychological consultants only partially persuasive. Plaintiff further contends that the ALJ's mental RFC was not supported by substantial evidence. Finally, Plaintiff argues that the ALJ failed to explain how the mental RFC accounts for Plaintiff's limitations. The Court finds that the ALJ sufficiently articulated the reasons behind her decision and that the mental RFC was supported by substantial evidence.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p, 1996 WL 374184, at *2. When determining a claimant's RFC, an ALJ must "evaluate the intensity and persistence of [a claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 416.945(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct [her] own RFC finding without a proper medical ground and must explain how [she] has reached [her] conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (internal quotations and citation omitted). Here, the ALJ has said enough to ensure that she considered the totality of Plaintiff's limitations and included all limitations supported by the record in formulating the RFC.

In this case, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record" and concluded that Plaintiff could perform a full range of work at all exertional levels but with certain mental limitations. R. 36-37. The ALJ found the opinions of two state agency psychological consultants, Dr. Marsha Toll and Dr. Linda Skolnick, "persuasive, except to the extent that they find the [Plaintiff] is limited to one-to-two step tasks,"

3

because the record indicated Plaintiff could complete more complex tasks. R. 40. Accordingly, the ALJ determined that Plaintiff could "perform simple, routine, and repetitive tasks." *Id.*

Plaintiff first asserts that it was illogical for the ALJ to find the consultants' opinions persuasive without providing her reasoning or citing supporting evidence from the record. [12], p. 3. The ALJ's decision does not explicitly state why she found the opinions persuasive. Nevertheless, the Court finds that read as whole, the ALJ's decision sufficiently demonstrates her reasoning. *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("We do not discount [a review of the evidence] simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout h[er] decision would be redundant."); *see Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole."). Additionally, ALJs are subject to "the most minimal of articulation requirements," and must simply "provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the reviewing court] to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Warnell*, 97 F.4th at 1053-54.

Here, the ALJ demonstrated that she found the consultants' opinions persuasive because aside from the one-to-two-step limitation, the ALJ adopted the consultants' RFC limitations regarding simple directions, simple tasks, and working away from the public. R. 36, 83-84, 94-95, 105-106. Throughout her opinion, the ALJ discussed how the record supported the RFC limitations. For example, in finding that Plaintiff should be limited to simple directions, the ALJ discussed evidence of difficulties with language, processing new information, executive function, and recall while also noting that "mental examination findings were routinely normal or unremarkable." R. 37-38. In adopting the consultants' finding that Plaintiff should work away from the public, the ALJ pointed to Plaintiff's work history, autism diagnosis, social anxiety, and social life. R. 34, 37-39. To the extent that the ALJ adopted the consultants' opinion limiting Plaintiff to simple tasks, the ALJ noted the portions of the record that supported the limit. R. 35, 37-38. By adopting portions of the consultants' opinions and explaining her mental RFC determination, the ALJ demonstrated that the consultants' opinions were persuasive to the extent they were consistent with the record. Accordingly, the Court finds that the ALJ sufficiently articulated her reasons for finding the consultants' opinions only partially persuasive. Furthermore, even if the ALJ had failed to articulate why the consultants' opinions were persuasive, such an error would be harmless. As "the harmless error standard applies to judicial review of administrative decisions," the Court will not remand a case to the ALJ if "convinced that the ALJ will reach the same result." *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022).

Plaintiff also argues that substantial evidence did not support the ALJ's departure from the consultants' opinions. [12], p. 4. In both of their mental RFC examinations, Drs. Toll and Skolnick opined that Plaintiff could "manage simple to 1-2 step tasks." R. 84, 95, 106. As stated above, while the ALJ adopted their recommendation that Plaintiff be limited to simple tasks, the ALJ declined to include a one-to-two-step task limit in her mental RFC determination. The ALJ thoroughly explained how the record did not support a more restrictive limit. For example, the ALJ pointed to Plaintiff's ability to accomplish sufficiently complex tasks such as "live independently, shop, clean, do laundry, prepare meals, drive, and travel." R. 40. The ALJ also discussed testing that demonstrated Plaintiff had "goal-directed thought processes, intact memory, normal concentration, good insight, and good judgment." R. 40, 361-362, 452, 454-55, 466, 512, 561-66,

583, 622, 627. Elsewhere in her decision, the ALJ discussed other reports, medical examinations, and testimony that indicated Plaintiff was not restricted to one-to-two-step tasks. R. 38-39. While Plaintiff points to portions of the record that could support a more restrictive limitation, the Court finds that the ALJ's mental RFC determination was supported by substantial evidence. This Court does "not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Plaintiff's argument that the ALJ improperly made inferences regarding Plaintiff's ability to live independently, drive and travel is unavailing. An "ALJ [is] entitled to draw inferences from evidence of . . . inconsistencies between Plaintiff's description of [her] symptoms and the overall record and treatment." *Michael A. v. Kijakazi*, No. 20 CV 4585, 2023 WL 6311535, at *8 (N.D. Ill. Sept. 28, 2023). Here, the ALJ did just that, inferring that Plaintiff's medical records, her testimony, as well as her ability to handle personal finances, prepare food, complete chores, travel, and otherwise live independently, indicated an inconsistency between the severity of Plaintiff's alleged symptoms and the record. R. 35, 40. The ALJ's mental RFC finding, including her reasons for departing from the consultants' opinions, were supported by substantial evidence. Accordingly, the ALJ did not err by excluding the one-to-two-step limitation from the mental RFC.

Plaintiff next faults the ALJ's mental RFC determination for failing to take into account her moderate limits in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. Specifically, Plaintiff claims that the ALJ should have explained how the RFC took into account Plaintiff's "specific, idiosyncratic limits," such as her auditory processing disorder or her difficulties receiving feedback. [12], p. 9. When formulating an RFC for a claimant, an ALJ must account for all moderate limitations identified in the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). However, as the Seventh Circuit has noted, a "'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair.'" *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1). Further, "'fair' in ordinary usage does not mean 'bad' or 'inadequate.' So a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id.* Here, the ALJ's mental RFC adequately addresses each moderate limitation. R. 36. As discussed above, the ALJ discussed to what extent the record supported that Plaintiff struggled with understanding and completing multi-step tasks. R. 39. The ALJ stated that the Plaintiff could not perform at a specific production rate. *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (noting that, while simple instructions and tasks did not account for the ability to perform a sustained pace over the course of a workday, a restriction in claimant's ability to meet production requirements *did* adequately capture this limitation) (citing *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020)).[2] Regarding social limits, the ALJ noted that the mental RFC took into account Plaintiff's "anxiety, recurrent depression, and communication challenges due to her auditory processing disorder and autism spectrum disorder." R. 39. Finally, the ALJ went beyond the consultants' opinions and provided for a moderate limitation in adapting oneself by noting Plaintiff can only tolerate occasional changes in the work setting. The ALJ also specifically declined to credit all of Plaintiff's alleged mental limitations,

---

[2] To the extent Plaintiff claims that the ALJ's mental RFC finding did not take into account whether she could accomplish tasks over the course of a whole workday, [12], p. 6, the Court similarly finds no error as this issue is addressed by the production limitation. *See Lothridge v. Saul*, 984 F.3d at 1233 (citing *Martin v. Saul*, 950 F.3d at 374).

5

noting that "the largely normal mental status findings of record, the lack of significant mental health treatment . . . and the claimant's ability for a wide range of daily activity, support that she retains significant function." *Id.* The ALJ more than satisfied the minimum articulation requirements. Accordingly, the Court finds no error.

### **Non-State Agency Medical Opinions**

Plaintiff also claims that the ALJ erred in her assessment of the medical opinions. The Court finds that the ALJ gave appropriate reasons for discrediting the medical opinions and therefore finds no error.

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c. Instead, the ALJ must consider factors such as supportability, consistency, relationship with the claimant, and length of the treatment relationship. 20 C.F.R. § 404.1520c(a), (c). Among these, supportability and consistency are the most important factors, and the ALJ is required to explain how they considered these two factors in their determination or decision. *Patrice W. v. Kijakazi*, No. 20 CV 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (citing 20 C.F.R. §404.1520c(b)(2)). In assessing the supportability factor, a medical opinion is considered more persuasive "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c. In assessing the consistency factor, an ALJ should consider the consistency of the medical opinion with "the evidence from other medical sources and the nonmedical sources in the claim." *Id*. "[O]nce the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated [her] reasons— a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (internal quotation marks and citation omitted).

The ALJ found the opinions of neuropsychological consultative examiner Dr. David A.S. Kaufman, treating provider Dr. Jennifer S. Caruso, social worker Janet Myers, and Nurse Practitioner Treacy Williams unpersuasive. The Court finds that the ALJ appropriately considered these opinions. Dr. Kaufman opined that Plaintiff "has cognitive defects in processing speed, executive function, and initial memory span that interfere with her ability to learn information easily and shift her train of thought to accommodate changing situations or complex attentional demands." R. 40, 365. The ALJ found this opinion unpersuasive because it was "unsupported by Dr. Kaufman's own testing," and was inconsistent with objective evidence in the record. R. 40. For example, the ALJ noted that Dr. Kaufman's testing showed Plaintiff in the average range for abilities in nonverbal memory, working reasoning, and auditory attention span. R. 40, 363-65. Where Plaintiff tested below average in verbal and visuospatial memory, testing indicated she could learn from repetition over time. R. 40. Additionally, the ALJ observed that Dr. Kaufman's testing was inconsistent with the record which showed Plaintiff "has goal-directed thought processes, intact memory, normal concentration, good insight, and good judgment" as well as a lack of significant treatment and success at work without accommodations. *Id.* The ALJ noted the portions of Dr. Kaufman's testing that did not support his own findings and the portions of the record that his testing contradicted. Accordingly, Court finds that the ALJ appropriately evaluated and sufficiently articulated her assessment of Dr. Kaufman's medical opinion.

In finding Dr. Caruso's medical opinion unpersuasive, the ALJ noted that the opinion was provided in a check-the-box form without specific explanations regarding findings, testing, or other information to support the form.[3] The ALJ noted that while Dr. Caruso opined that Plaintiff had marked limitations in adapting or managing herself, Dr. Caruso's own testing indicated that Plaintiff had "an above average ability to develop and maintain an appropriate problem-solving strategy across changing stimulus conditions and is expected to function adequately," while noting periods of "emotional, cognitive, or behavioral dysfunction." R. 40, 461, 464, 475, 478, 573, 576. The ALJ further noted that she found Dr. Caruso's opinion unpersuasive because it relied on Plaintiff's subjective reports, which were contradicted the record indicating that Plaintiff could sustain normal concentration and stay on task. R. 361-63, 561, 563, 565, 583 The ALJ further noted that Dr. Caruso's opinion conflicted with recent psychiatric treatment notes in which Plaintiff denied difficulties with concentration, memory, or executive function. R. 40, 566, 571. Plaintiff argues that an "ALJ should not discount a doctor's opinion for lack of objective support or explanation when the Doctor's treatment notes were included in the record." [12], p. 14 (citing *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010)). However, although the ALJ criticized the format of Dr. Caruso's opinion, she nonetheless conducted a holistic review by looking at Dr. Caruso's treatment results and other findings in the record. Thus, the Court finds that the ALJ appropriately assessed Dr. Caruso's medical opinion.

The ALJ found social worker Myers' and Nurse Practitioner Williams' opinions unpersuasive due to a lack of objective findings, overreliance on Plaintiff's subjective reports, internal inconsistencies, and as contradicted by the record as a whole, which demonstrated that Plaintiff could "perform a wide variety of daily activities." R. 41. The ALJ properly articulated the lack of support and consistency in the opinions that made the opinions unpersuasive. *Id.* Plaintiff contends that the ALJ was wrong to disregard the opinions because they relied on subjective statements, citing *Gerstner v. Berryhill*, which noted that "all findings in psychiatric notes must be considered, even if they were based on the patient's own account of her mental symptoms." 879 F.3d 257, 262 (7th Cir. 2018) (citation modified). However, the ALJ here did consider the opinions and found them unpersuasive not only because they relied on subjective statements, but also because Plaintiff's statements and the medical opinions were inconsistent with the record. R. 41. Accordingly, the Court finds that the ALJ appropriately considered the opinions, including Plaintiff's self-reported limitations, to the extent they were supported by the record. *See Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019) (approving of an ALJ's RFC that included Plaintiff's limitations but did not include self-reported symptoms that were not supported by record evidence). The Court finds that the ALJ appropriately assessed social worker Myers' and Nurse Practitioner Williams' opinions.

Plaintiff also faults the ALJ for relying on Plaintiff's lack of significant treatment as a basis for discrediting the opinions of Dr. Kaufman, Dr. Caruso, and Nurse Practitioner Williams. Specifically, Plaintiff contends that before discounting the opinions on this basis, "the ALJ was required to ask Plaintiff about that and consider the reasons offered, and the ALJ should have considered Plaintiff's limited financial resources." [12], p. 11. While an ALJ must consider a Plaintiff's possible reasons for failing to seek treatment, Social Security Rule 16-3p does not

---

[3] Regarding the ALJ's criticism of Dr. Caruso's form for its lack of specific explanations, the Court notes that Dr. Caruso did provide explanations by directing readers to her assessment reports. R. 491-93. The ALJ nevertheless reviewed Dr. Caruso's assessment reports as part of her analysis.

7

require the ALJ to solicit from Plaintiff the reasons for that failure. *Deborah M. v. Saul*, 994 F.3d 745, 790 (7th Cir. 2021) (citing *Tonya R. v. Saul*, No. 19 CV 2374, 2020 WL 1675666, at *3 (N.D. Ill. Apr. 6, 2020)). Here, the ALJ acknowledged Plaintiff's financial barriers to treatment, but did not otherwise discuss how it factored into the negative inference she drew. R. 37-38, 40-41. While the record references Plaintiff's inability to pay and lack of insurance, the record is otherwise unclear as to why Plaintiff did not seek treatment recommended by Dr. Kaufman, among others. R. 378. For example, the record contained multiple references to Plaintiff's limited finances or insurance. R. 40, 60, 237, 513, 621, 626. Yet Plaintiff was also offered resources for income-restricted patients. R. 516. Nevertheless, the Court finds any error was harmless. As stated above, the ALJ provided numerous reasons for discrediting the medical opinions, such as evidence of internal inconsistencies, average testing results, a history of successful substantial gainful activity without accommodations, and Plaintiff's wide range of daily activities. R. 40-41. The Court is convinced that the ALJ would reach the same result, even if the lack of significant treatment was not part of the analysis. Accordingly, the Court finds that the ALJ appropriately assessed the medical opinions.

### **Subjective Symptoms**

Finally, Plaintiff argues that the ALJ failed to conduct a proper analysis of her subjective symptoms. Plaintiff particularly criticizes the ALJ's reliance on her work history, daily activities, and medication use without considering the contextual factors that qualified them. The Court finds that the ALJ reasonably evaluated Plaintiff's subjective symptoms.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, opinion evidence, daily activities, medication, and course of treatment. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5–8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original). Here, the ALJ's evaluation of Plaintiff's symptoms was adequately supported with evidence and explanation.

The ALJ cited to an adequate amount of medical evidence showing that Plaintiff's subjective symptoms were not entirely consistent with the medical record. For example, the ALJ noted that examinations routinely indicated Plaintiff's appropriate eye contact, affect, and average problem solving abilities. R. 34-41. Similar examination results indicated that Plaintiff had "the cognitive skills needed to be a successful employee." R. 38, 361. As discussed above, the ALJ thoroughly considered and analyzed the opinion evidence and supported her findings with substantial evidence from the record. R. 40-41. The ALJ also considered Plaintiff's prior work history at Washtenaw Community College and Plaintiff's daily activities such as cooking, cleaning, and shopping. R. 35, 37. Plaintiff faults the ALJ for misconstruing her work history and daily activities by not acknowledging that Plaintiff had worked with her mother and sister at the community college and received substantial help from her roommate, boyfriend, and her ex-husband. [12], p. 4, 14-15. However, the ALJ found Plaintiff's testimony inconsistent with

Plaintiff's own function report which attested she could complete a wide variety of daily activities including cooking, housekeeping, socializing, and shopping. R. 39, 232-34. Plaintiff also faults the ALJ for finding that her symptoms were controlled with medications without explaining how the medications, which she contends were not fully effective, undermined her reports of remaining symptoms and limitations. However, the ALJ both acknowledged the partial efficacy of Plaintiff's medication and explained that the broad sweep of the record demonstrated Plaintiff was not so limited. R. 34-37.

Finally, the ALJ found that Plaintiff's mental health treatment was "not fully consistent with her allegations." R. 37. In so finding, the ALJ relied on Plaintiff's cessation of counseling and lack of consistency with medical health treatment. *Id.* As stated above, the Court finds that the ALJ may have erred by failing to sufficiently investigate and credit Plaintiff's reasons for failing to get treatment. "Regardless, an ALJ's credibility assessment 'need not be perfect; it just can't be patently wrong." *Derrell G. v. Bisignano*, No. 23 CV 1158, 2025 WL 2076668, at *6 (N.D. Ill. Jul. 23, 2025) (citing *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. Apr. 10, 2014)). Evaluating the opinion and record as a whole, the ALJ's credibility determination was not patently wrong.

Accordingly, the Court finds that the ALJ sufficiently followed the guidelines in SSR 16-3p when evaluating Plaintiff's subjective symptoms as a whole by adhering to the two-step process and considering various types of evidence as required. The Court notes that the ALJ's record review is detailed and comprehensive. The ALJ also set out Plaintiff's subjective statements in detail and appropriately considered the consistency of Plaintiff's own statements. The ALJ noted Plaintiff's subjective symptoms, such as difficulty with following written instructions, responding appropriately to criticism, socializing with others, and caring for personal needs. R. 34-35. The ALJ contrasted these statements with the medical records and opinions, daily living activities, and the ALJ's own findings based on the hearing testimony. Ultimately, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent because they were not as limiting as alleged. R. 37. The Court finds that the ALJ adequately evaluated Plaintiff's subjective symptoms and provided a logical bridge in her reasoning.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse and remand the Commissioner's decision [12] is denied and the Commissioner's motion for summary judgment [15] is granted.

Date: September 30, 2025          ENTER:

_____
United States Magistrate Judge